UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| : | Case No. 3:02CR138(EBB) |
| v. : | |
| : | |
| DAVID WILSON : | |
| _____: | |

**UNITED STATES' SUPPLEMENTAL MEMORANDUM**
**REGARDING CRIMINAL FORFEITURE**

The United States of America, by and through the undersigned Assistant United States Attorneys, hereby submits the this supplemental memorandum to further address some of the relevant issues raised during the forfeiture hearing held on June 21, 2006. Sentencing is presently set for July 12, 2006.

As the Court is aware, the government seeks a forfeiture money judgment in the sum of $660,000 on the ground that such sum constitutes the proceeds of the defendant's drug trafficking activities. The defendant principally argues that the Court lacks the authority to enter a money judgment and, alternatively, that any such money judgment should be limited to the defendant's net profits.

A.   Money Judgment as a Remedy

As we stated in our reply brief, the defendant's position that a money judgment is not authorized is contrary to 20 years of established forfeiture law and is based on one district court case out of Pennsylvania, *United States v. Croce*, 334 F. Supp. 2d 781 (E.D. Pa. 2004). *Croce*, which is on appeal and not binding upon this or any other court in the country, has since been rejected by three appellate courts. Thus, this Court should reject the defendant's position that a

money judgment is not authorized.

      B.    <u>The Testimony Adduced at the Forfeiture Hearing</u>

During the forfeiture hearing, Special Agent Donahue Hibbert testified that he was the case agent from 1998 until 2004, during which he performed a variety of duties, including acting in an undercover capacity, interviewing cooperating individuals, and generally overseeing all aspects of the investigation. Agent Hibbert testified at the forfeiture hearing to provide evidence regarding the wholesale and retail prices of marijuana during the conspiracy period.

First, Agent Hibbert testified that in 1998 he acted in an undercover capacity posing as a Connecticut marijuana distributer and negotiated for the purchase of 500 pounds of marijuana from Rosa Leyva, who was one of the same Arizona-based suppliers used by the defendant. Leyva intended to charge Agent Hibbert $525 per pound.

Agent Hibbert also testified that he interviewed several cooperating defendants who either sold marijuana to the defendant or purchased marijuana from the defendant. Although these interviews occurred from 1998 and thereafter, the interviews recount these individuals' drug activity dating back to 1993 and continuing through 2000. Specifically, Agent Hibbert testified that, based upon these interviews, he learned that the defendant was purchasing marijuana from the Leyva family in Arizona from 1993 to 1997 for $300 to $400 per pound, and re-selling it on the east coast for $700 to $800 per pound. Agent Hibbert further testified that the defendant was re-selling the marijuana in 1998 for $750 per pound, and from 1998 to 2000 for $800 to $1000 per pound.

At the hearing, the government also admitted into evidence a drug ledger seized from the defendant's trash in 1998, which documented 176 pounds of marijuana that the defendant had

negotiated to purchase during a recent trip to Arizona. On the ledger, the defendant indicated that he intended to purchase three different quantities of marijuana at prices ranging from $400 to $475 to $500, and then re-sell a portion of the marijuana at $750 per pound. It is unclear from the ledger what price he paid for the portion that the defendant intended to sell for $750 per pound.

     Lastly, Agent Hibbert testified that, based upon his experience, the average cost of transporting marijuana from Arizona to Connecticut was $15 to $25 per pound.

     In sum, the government submits that this testimony and evidence demonstrates that, on average, the defendant resold the marijuana at approximately $350 to $400 more than his cost to purchase the marijuana.[1] The government recognizes that there is no evidence as to the wholesale and retail prices for the marijuana during the early part of the conspiracy period from 1989 to 1993, or the wholesale price from 1998 to 2001. However, the government submits that the evidence adduced at the hearing is sufficiently representative of the conspiracy period as a whole to satisfy the preponderance of the evidence standard. This is especially so given the fact that, as set for below, the government is not seeking gross proceeds and is limiting its forfeiture money judgment request to a rough calculation of the defendant's profit per pound on only1000 kilograms (2,200 pounds).

---

     [1] This figure does not account for what the defendant had to pay for transporting the marijuana. However, even if one were to subtract the defendant's cost for transportation, which Agent Hibbert testified ranged from $15-$25 per pound, it appears that the defendant was still netting at least $300 per pound.

      C.      <u>Calculating the Money Judgment</u>

The defendant's position on how the money judgment should be calculated is simply wrong. For many reasons, the government is entitled to forfeiture of the gross proceeds, not net profits. The most cogent explanation for this principle can be found in the Fourth Circuit's discussion in *United States v. McHan*, 101 F.3d 1027 (4th Cir. 1996). In *McHan*, the defendant was convicted of various offenses relating to his participation in a marijuana distribution conspiracy. The government appealed the district court's ruling which found that, pursuant to 21 U.S.C. § 853, the government was only entitled to forfeiture of the net profits that McHan personally earned from the sale of the marijuana. The court of appeals ruled that all of the legislative history as well as the policy considerations behind criminal forfeiture dictate that the government was entitled to the gross proceeds -- that the district court erred in subtracting the cost of the marijuana and further erred by not imposing joint and several liability on the defendant.

In support of its ruling, the *McHan* panel found extremely persuasive the fact that the forfeiture statute initially provided forfeiture of "profits obtained," but was later changed by Congress in 1984 to provide for forfeiture of all "proceeds" obtained from the unlawful activity. 101 F.3d at 1041. The court further noted that its reasoning was consistent with the legislative history to the amendment which was to render forfeitable under Section 853 the same type of property that was already subject to [civil] forfeiture under 21 U.S.C. § 881(a)(6), which has never been interpreted to permit a deduction for the costs of illicit drug transactions. *Id*.

Further, the *McHan* court likened the drug forfeiture statute, Section 853, to the RICO forfeiture statute, Section 1963. The court noted that the legislative history to 1963 revealed that

Congress believed that it "should not be necessary for the prosecutor to prove what the defendant's overhead expenses were" and that the use of the term "proceeds" rather than "profits" was meant to "alleviate the unreasonable burden on the government of proving net profits." *Id.* at 1042 (quoting S. Rep No. 225, 98th Cong., 2d Sess., at 199 (1984). And, because drug and RICO forfeiture statutes are generally construed the same, the court reasoned that Congress intended to provide for forfeiture of all tainted revenues under Section 853. *Id.*

Lastly, the *McHan* court opined that the proper measure of criminal responsibility is the "harm that the defendant caused, not the net gain that he realized from his conduct." 101 F.3d at 1042. Otherwise, clever drug dealers could limit their liability by manipulating their books or engage in complicated accounting measures. *Id.*

The concepts of gross proceeds and joint and several liability are valid in the Second Circuit as well.[2] In *United States v. Benevento*, 836 F.2d 129 (2d Cir. 1988), the Second Circuit ruled that the district court was correct to impose joint and several liability against a convicted narcotics trafficker under Section 853. This decision let stand the district court's ruling, published at 663 F. Supp 1115 (S.D. N.Y. 1987), that the government was entitled to forfeiture of the gross proceeds that Benevento collected from his heroin customers, and rejected the defendant's argument that the money judgment should be offset by the interest that other co-conspirators had in the collected funds. 663 F. Supp at 1118. The Benevento court reasoned that joint and several liability was necessary to effectuate Congress' purpose in enacting the Comprehensive Drug Abuse Prevention & Control Act of 1970 to deal with defendants defeating

---

[2] The government was apparently mistaken in its earlier submission when it represented that it was unclear whether forfeiture of gross proceeds was permissible in the Second Circuit.

forfeiture by removing, transferring or concealing assets prior to conviction. *Id*. See *also United States v. Colman Commercial Carrier, Inc.*, 232 F. Supp. 2d 201 (S.D. N.Y. 2002) (criminal forfeiture is designed to be punitive; co-conspirators are jointly and severally liable for forfeiture of proceeds).

    In this case, the PSR generally describes the defendant's marijuana operation as one where he traveled to Arizona to negotiate the wholesale purchase of marijuana and to coordinate the transportation of the marijuana to Connecticut. After the marijuana arrived in Connecticut, the defendant then sold the marijuana at retail prices in the Connecticut and New York area. Based upon the testimony of Special Agent Donahue Hibbert, Wilson sold his marijuana on the east coast for as low as $700 per pound back in 1993 to as much as $1,000 per pound in 2000. Given the fact that the defendant has stipulated that he conspired to distribute at least 1000 kilograms (2,200 pounds), it is abundantly clear that during the conspiracy period substantially more than $660,000 in tainted drug proceeds was generated by the defendant. The taint does not disappear merely because the proceeds are no longer available in cash form, were spent by the defendant, or because the defendant paid a portion to someone else for their role in the drug conspiracy. *See United States v. Robilotto,* 828 F.2d 940 (2nd Cir. 1987) (it matters not that the defendant no longer retains possession of the proceeds of his criminal offense).

    Plainly, given the fact that the case law indicates that the government is entitled to forfeiture of gross proceeds and that the defendant is jointly and severally liable for such a sum of money, the government is making an enormous concession by limiting its money judgment request to a very conservative estimate of the gross proceeds minus the cost of the marijuana for only the 1000 kilograms stipulated to by the defendant during his change of plea, rather than the

3000 kilograms found by the PSR.[3]

In sum, given the fact that the government is legally entitled to a much larger money judgment based upon the gross proceeds that the defendant generated during the conspiracy period, this Court can very easily find by a preponderance of the evidence that the defendant should be required to forfeit a much lesser sum based upon the average revenues he earned minus the average cost of the marijuana.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court find that the sum of $660,000 constitutes proceeds obtained directly or indirectly as a result of the criminal activities of which the defendant was convicted.  Further, the government requests that, at the time of sentencing, the Court enter a money judgment in the government's favor in this amount and include same in the oral pronouncement of sentencing..

                                              Respectfully submitted,

                                              KEVIN J. O'CONNOR
                                              UNITED STATES ATTORNEY

                                              /s/ Mark D. Rubino
                                              MARK D. RUBINO
                                              ASSISTANT UNITED STATES ATTORNEY
                                              157 Church Street
                                              New Haven, Connecticut 06510
                                              Tel. (203) 821-3828
                                              Federal Bar No. CT03496

---

   [3]  The government is making this concession, not because it believes that is what it is entitled to under the law, but purely for practical reasons to avoid having an uncollectible debt on its books.

CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was faxed and mailed this 6th day of July 2006 to

Joseph Martini, Esq.
Pepe & Hazard
30 Jelliff Lane
Southport, Ct 06890

Sandra Hunt
U.S. Probation
New Haven, CT

    /s/Mark D. Rubino
MARK D. RUBINO
Assistant United States Attorney